Good morning, Your Honors, and good morning to the Counsel. May it please the Court, my name is Marvin Gong, representing the Petitioner. Can you speak up a little? I can't hear you. Pull the mic in and speak up so we can hear you. Thank you. First of all, does the Court wish me to repeat facts in the case? You're done. We're familiar with the case. This is the two passport situation with a Chinese passport and a Korean passport. That's correct. We raised two issues on the appeal. First issue was his nationality. As Your Honor said, we have a confusing situation that he entered with a Korean passport, but later on he provided a Chinese passport with his other documents showing that he was from China. And second — Mr. Wong, let me stop you there. Why would he have provided the agents at the border in Texas with his Korean passport? Did he think that the Korean passport somehow would get him into the United States faster than a Chinese passport? Why didn't he give them what he claims is the false passport instead of the real passport? What difference did it make? His entire journey to the United States was arranged by a smuggler, and he was told and he testified to that fact. He had a Chinese passport, though, to get into Russia. So he was not adverse to using the Chinese passport. So you think maybe he just got bad information from smugglers? No. To my knowledge, Korean passport will allow him to go to other countries. As he said, he traveled basically around the world to Russia and to other countries and eventually to Mexico, which allowed him to enter the United States. He traveled from Russia, I think, to Germany, to Mexico, right? That's right. Okay. And it's easier to get into Mexico with a Korean passport than a Chinese passport? That's right, Your Honor. Was he carrying his Chinese passport? He did. Okay. So he certainly could have used the Chinese passport to come into the United States. He testified that the smugglers told him to just state that he was from Korea if he was stopped by the border agent. But immediately after he was apprehended, he told the border agent that he was from China. That's reflected on the record. That's reflected on the record that he said that he told them he was from China? The border agent marked in his report that he was from China. And also he crossed out the date of birth to reflect his true date of birth on his Chinese passport. And also I'd like to call attention that when Petitioner requested bond hearing with the Immigration Court in El Paso, his attorney from New York also filed a motion and a letter indicating that Petitioner was a Chinese citizen, and the attorney told the court his true name. And later on, the cumulative evidence that he provided to the court was that his passport was found genuine, as well as his Korean passport, as Your Honor can see from the record. And also he provided two authenticated documents from China. One is his Chinese ID, birth certificate. The other one is his driver license. And both documents were authenticated by an American consular officer in China. He also provided a few documents, such as his graduation certificate. And all of the original documents were provided to the government for forensic evaluation, and they declined to do so. So are you – I want to make sure I understand. You're saying he established the authenticity of the Chinese passports. Actually, the government did. Okay. So the Chinese passports were disputably then valid. Yes, Your Honor. Okay. And then the Korean passport? Was also found to be genuine. Genuine. So he's got two different passports, both genuine. The report from the forensic documents examiner was that the Korean passport and the Chinese passport is in conformity with their specimen in the lab. And the report states that they cannot verify whether those passports were obtained by legitimate means. All right. It is the petitioner's position that he obtained the Korean passport by false means. And it's very easy for the government to find out whether the passport was genuine or not, because the forensic lab has informed the government that all they have to do is to send information to an American consulate in Seoul and contact an anti-fraud unit there to find out. It is impossible for the petitioner to find out, to get evidence to establish which one is genuine or not. But we did provide, I mean, petitioner did provide other documents to show that he was indeed from China. Okay. Well, he seems to have dual citizenship on the record. Dual citizenship, actually, the United States government told us that that's impossible for Chinese and Korean citizens. Neither country recognizes dual citizenship. The report from the Border Patrol says that they were interviewed in Korean when they were picked up in Texas. Is that right? In Korean, yes. Yes, so they were picked up in Korean. And the report, again, from the Border Patrol agent has them listed as Korean nationals that produced Korean passports. They traveled from Korea. I mean, there's just nothing in here that mentions China, other than on the 213 form that you referred to earlier where the agent did handwrite in or somebody handwrote in China and then handwrote in the birth, what you said was his actual birth date. That's correct, yes. But everything else on here says his country of citizenship is Korea, lists his passport number. Everything else indicates that he was from Korea. Right. The agent also said when he apprehended those individuals at a border area, the individuals didn't speak English. So when he asked their immigration status, the agent received no response from them, other than they produced a Korean passport. Now, did Mr. Yongmoo deny that the signature on the 213 was his? No, he doesn't. He did admit that that was his? That's correct, Your Honor. But this is written in Korean, isn't it? Yes, Your Honor. Okay. He speaks Korean. He speaks Korean, but the testimony below was in Mandarin Chinese. Okay. And what name does it say translated? On the first page? On the 213 form. On the 213, there were two names. One was, I believe, was two names. One was the name from the Korean passport. The other name was translated. The name on the Korean passport is what? Yongmoo, that's the name on the case. Yongmoo? Yes. Okay, that's the name on the Korean passport? On the Korean passport. Okay. And is that the name that he has written down here in Korean? There was another name, I believe, that came out early in the proceedings. That was a transliteration of his Chinese name by a Korean translator. Jin Xiuji? Jin Xiuji. And there was another name, some similar, but it's spelled differently. That was from an interpreter. So are you suggesting that your client can prevail even if the Korean passport is genuine? Yes, Your Honor. So if it's not fraudulent, the IJ is confronted with someone who has two valid passports issued to him, each one issued to him as citizenship. What we suggest is the only evidence relied upon by the government is a Korean passport. And the forensic report does not tell whether that Korean passport was obtained by false means. We don't know. Okay. It's genuine, but it may have been obtained by lies. Right. Okay. Do you want to save a minute for rebuttal? I'd like to. Thank you. Okay. You may. Good morning, Your Honors. Ann Varnon for the Attorney General Eric Holder, Eric Holder, Jr. May it please the Court. Your Honor, the government's position is that substantial evidence supports the agency's alternative finding that assuming that Mr. Jin, who he uses that name now, I believe, is a citizen of China, as he claimed in his testimony, that he still failed to meet his burden of proof to show that he would be persecuted or that he had a well-founded fear of persecution in China if he were to return. And a reasonable adjudicator would not be compelled to reach a finding contrary to the agency's. And if the Court were to find that that would be true and reverse the alternative finding, they would have to believe that China persecutes every person who ever practiced Falun Gong. And we know that that is not true. Basically, I want to be sure I understand the government's position then. Are you giving up on the confusion that he could return to Korea as opposed to China? You're saying even if we were to reject that, he'd still prevail because if he is Chinese and would have to go back to China, the two weeks of participation in Falun Gong activity doesn't qualify as enough basis for a fear of future persecution. That's true, Your Honor. We certainly don't relinquish our argument that the alien had the burden of proof to show who he was and to prove his claim. And what we're saying is the immigration judge and the board correctly found that based on the evidence that he presented, even assuming his credibility that he is from China, his having practiced Falun Gong for two or three times before it was declared illegal in 1999. And nothing happened to him or his family while he was in China that he did not meet his burden of proof to show that he would be persecuted on return to China. On the first issue, I'm troubled by the IJ's refusal to allow cross-examination of the forensic expert who provided extremely critical evidence. Why would that be tolerated? The record is clear on that, even though there were a number of attorneys who appeared on behalf of the government through the hearings, either the INS or let's say the DHS did indicate at one point in the record toward the end of the proceedings that they had contacted the person who was the expert on the authenticity of the Korean passport, and that person was unavailable to come. Well, in person. Yes. In person, but the IJ wouldn't even set up the telephone for it, isn't that right? That is correct, Your Honor, and I believe that the immigration judge said again and again that the courtroom was not set up for that. They didn't have a telephone. Right, so that they could have a simultaneous phone. There was no way to continue the hearing and move to a room that was set up? I do not know, Your Honor. In this day and age, the Justice Department doesn't have, wherever the IJs are set up, I know they have been starved in the past for resources, but they don't have a speaker phone where they could make a phone call and arrange a simple telephonic conference? I think they would have that, but not for the translation into Chinese to be simultaneous. That was the indication that that's the real problem. Okay, so how is the translation done at the hearing? Is there a simultaneous translation? There is an interpreter who does the simultaneous. Simultaneous means that the witness speaks in Chinese. The Chinese interpreter then interprets. It's not U.N. simultaneous where they are talking basically in tandem. That's correct. They have to wait for a normal litigation. You have an interpreter who listens and then translates. So there's speech, translation, speech by the interpreter. Yes. So it's a very slow and cumbersome process. Yes. What difference does it make if the witness is either in court, the American witness is either in court or on the phone? Why can't the interpreter who is present there for the in-court testimony make that kind of translation over the phone? That is not clear from the transcript, and I could investigate the matter and get back to the court. At least this judge is concerned about denying access like that on mechanical convenience of the court when it just doesn't seem to make sense. It's an institutional concern here. Certainly. I would appreciate it if you would follow up. I will certainly get back to the court on that. The immigration judge did find that Mr. Jin's attorney did not ask to question the authenticator of the Chinese passport. And there's no way to tell whether either passport could be fraudulently obtained. Well, the key one here was the Korean passport. If it was fraudulent, then that is it was a fake, but he found it to be genuine, which posits that he's possibly got two genuine passports, and that was the source of the confusion. That is true. There, of course, was a lot of other evidence that tended to show that he was from Korea. So it wasn't solely the passport, but there were other reasons that were found. And it was extremely odd that he would come in claiming to be Korean when he had gotten a valid Chinese passport a year after he had this three-time period of practicing Falun Gong. He went and got a passport. And the period of time that he indicated that he apparently was, it was very hard to make out from the record whether he said he was in hiding and these people that he was with were apprehended toward the end of the time that he was in China, which was a year and a half after. He, as a law-abiding citizen, decided not to practice Falun Gong any further after he learned that he had done so in mid-1999, which would indicate June, and the government banned it in July. Counsel, I'm curious about one matter. As I recall, Mr. Jung Woo declined to designate a country, and the government asked that the IJ designate Korea, and I believe the IJ said Korea would be designated. Now, that means that that is where he will be returned to if he's ordered deported. Is that correct? Well, I believe that the actual order showed China first and then Korea alternatively. Oh, it does show China first? Yes. Okay. Your Honor, if there are no further questions, the government rests on the brief. Thank you. Counsel, you have a little time. Just one quick point, Your Honor. The essence of his asylum application is not how long he practiced. It's the fact that the Chinese government knows he practiced. It doesn't matter, as we know, the Chinese government is not a regime that's big on due process or proven innocent until proven guilty. The very fact that he practiced Falun Gong and the Chinese government considered a Falun Gong member as rival to the communist regime is enough to subject him to future prosecution. Counsel, the government mentioned that he got this passport a year after he spent the two weeks practicing Falun Gong. Your Honor, he testified that after he learned that his friend was arrested and summoned to the police station, he went in hiding, and the Chinese passport and the Korean passport was managed by the same smuggler. Okay. All right. Thank you. Thank you. All right. The case argued is submitted. Thank you, Counsel, for your arguments.
judges: Hall, Fisher, Bybee